CHUBB' **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*General Terms and Conditions*

GTC DECLARATIONS

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

**Policy Number**: 8251-9627

**NOTICE: THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY. READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.**   **Parent Organization:**        SXSW LLC

              Principal Address:             P. O. Box 685289

                                             Austin, TX 78768

**Item 2.**   **Policy Period:**

              (A)  From:                     August 17, 2019

              (B)  To:                       August 17, 2020

              At 12:01 AM local time at the address shown in Item 1.

**Item 3.**   **A Combined Maximum Aggregate Limit of Liability applies:**

              [ ] Yes                   ·      [X] No

              The Combined Maximum Aggregate Limit of Liability for all **Claims** under all **Liability Coverage Parts** shall be:

              Not Applicable

**Item 4.**   **Coverage applicable to this Policy:**

              [X]  Directors & Officers and Entity Liability Coverage Part

              [X]  Employment Practices Liability Coverage Part

              [ ]  Fiduciary Liability Coverage Part

              [ ]  Miscellaneous Professional Liability Coverage Part

              [ ]  Employed Lawyers Liability Coverage Part

**CHUBB**' **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*General Terms and Conditions*

| X | CyberSecurity Coverage Part |
| | Crime Coverage Part |
| | Kidnap Ransom and Extortion Coverage Part |
| | Workplace Violence Expense Coverage Part |

**Item 5.** **Extended Reporting Period:**

(A) Additional Period:          1 year

(B) Additional Premium:          100 % of Annual Premium

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

_____
Secretary

_____
Date

08/15/2019

_____
President

_____
Authorized Representative

CHUBB°   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>

*General Terms and Conditions*

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this Policy, the Company and the Insureds agree as follows:

## I.   TERMS AND CONDITIONS

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Part, the terms and conditions of each Coverage Part apply only to that Coverage Part. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part. All references to "Section", "Subsection", "Paragraph" or "Subparagraph" in these General Terms and Conditions shall apply only to these General Terms and Conditions, unless otherwise stated. All references to "Section", "Subsection", "Paragraph" or "Subparagraph" in a Coverage Part, shall apply only to such Coverage Part, unless otherwise stated.

## II.   DEFINITIONS

**Anniversary Date** means the date and time exactly one (1) year after the date and time set forth in Item 2(A), Policy Period, of the GTC Declarations and each succeeding date and time exactly one (1) year after the previous **Anniversary Date**.

**Claim** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Coverage Event** means the event or loss which must occur or be sustained or discovered, in order to invoke coverage under each **Non-Liability Coverage Part**.

**Defense Costs** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Expense** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Insured** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Insured Person** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Liability Coverage Part** means:

(A)   the Directors & Officers and Entity Liability, Employment Practices Liability, Fiduciary Liability, Employed Lawyers Liability and Miscellaneous Professional Liability Coverage Parts; and

(B)   Insuring Clause (A), Cyber Liability Coverage, of the CyberSecurity Coverage Part,

if purchased as set forth in Item 4, Coverage applicable to this Policy, of the GTC Declarations.

**Loss** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Non-Liability Coverage Part** means:

(A)   the Crime, Kidnap Ransom and Extortion and Workplace Violence Expense Coverage Parts; and

(B)   Insuring Clauses (B), Privacy Notification and Crisis Management Expenses Coverage; (C), Reward Expenses Coverage; (D), E-Business Interruption and Extra Expenses Coverage; (E), E-Threat Expenses Coverage and (F), E-Vandalism Expenses Coverage, of the CyberSecurity Coverage Part,

if purchased as set forth in Item 4, Coverage applicable to this Policy, of the GTC Declarations.

**Organization** means the **Parent Organization** and any **Subsidiary**. **Organization** shall also mean any such entity as a debtor in possession under United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Parent Organization** means the entity named in Item 1 of the GTC Declarations.

CHUBB'  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*General Terms and Conditions*

**Policy Period** means the period of time set forth in Item 2 of the GTC Declarations, subject to any prior termination in accordance with Section X, Termination of Policy.

**Policy Year** means the period, within the **Policy Period**, from the date and time set forth in Item 2(A), Policy Period, of the GTC Declarations to the first **Anniversary Date**, or the period from an **Anniversary Date** to its next succeeding **Anniversary Date**, subject to any prior termination in accordance with Section X, Termination of Policy.

**Potential Claim** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Securityholder Derivative Demand Evaluation Costs** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Subsidiary** means:

(A)    any entity while more than fifty percent (50%) of the outstanding securities representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**;

(B)    any entity while:

   (1)    exactly fifty percent (50%) of the voting rights representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**; and

   (2)    the **Parent Organization**, pursuant to a written contract with the owners of the remaining and outstanding voting stock of such entity, solely controls the management and operation of such entity; or

(C)    any foundation, charitable trust or political action committee while such entity is controlled by the **Parent Organization**.

**Voluntary Program Loss** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Voluntary Program Notice** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Wrongful Act** shall have the meaning ascribed to that term in each applicable Coverage Part.

---

III.   **LIMIT OF LIABILITY**

(A)    With respect to the **Liability Coverage Parts**:

   (1)    If the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations is elected, the amount stated in such Item 3 shall be the maximum aggregate limit of liability of the Company for all **Loss**, **Voluntary Program Loss** and **Securityholder Derivative Demand Evaluation Costs** during each **Policy Year** under all **Liability Coverage Parts** combined. However, any **Loss**, **Voluntary Program Loss** or **Securityholder Derivative Demand Evaluation Costs** paid under any **Liability Coverage Part** shall not exceed the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of such Coverage Part.

   (2)    If the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations is not elected, the maximum aggregate limit of liability of the Company for all **Loss**, **Voluntary Program Loss**, and **Securityholder Derivative Demand Evaluation Costs** during each **Policy Year** under each **Liability Coverage Part** shall be the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations for each **Liability Coverage Part**.

CHUBB'  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**$^{SM}$
*General Terms and Conditions*

(3)     **Defense Costs** are part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of each **Liability Coverage Part** and payment by the Company of **Defense Costs** shall reduce and may exhaust such Limits of Liability.

(B)     With respect to the **Non-Liability Coverage Parts**, the Company's maximum liability shall be the Limits of Liability set forth in the Declarations of each **Non-Liability Coverage Part**.

## IV. RELATED CLAIMS

With respect to the **Liability Coverage Parts**:

(A)     All **Related Claims** shall be deemed a single **Claim** made in the **Policy Year** in which the earliest of such **Related Claims** was first made or first deemed to have been made in accordance with the Reporting section of the applicable **Liability Coverage Part** (the "Earliest Related Claim").

(B)     All **Related Claims** shall be subject to the same Retention and Limits of Liability applicable to the Earliest Related Claim.

## V. EXTENDED REPORTING PERIOD

With respect to the **Liability Coverage Parts**:

(A)     If this Policy does not renew or otherwise terminates for a reason other than for failure to pay premium (each a "Termination of Coverage"), then an **Insured** shall have the right to purchase an Extended Reporting Period for the Additional Period and Additional Premium set forth in Item 5 of the GTC Declarations.

(B)     In the event of a Termination of Coverage and upon request from an **Insured**, the Company shall, in its sole discretion, provide a quote for Additional Periods other than as set forth in Item 5, Extended Reporting Period, of the GTC Declarations. Any such additional quote offered shall be subject to such Additional Premium as the Company may require.

(C)     The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.

(D)     This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the applicable Additional Premium, is received by the Company within sixty (60) days after the effective date of the Termination of Coverage.

(E)     If an Extended Reporting Period is purchased, then coverage otherwise afforded by this Policy shall be extended to apply to **Claims**: (1) first made during such Extended Reporting Period; and (2) reported to the Company pursuant to the Reporting section of the applicable Coverage Part, but only to the extent such **Claims** are for **Wrongful Acts** before the effective date of such Termination of Coverage or the date of any conversion of coverage described in Section VI, Changes in Exposure, whichever is earlier. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the **Policy Year** immediately preceding the Extended Reporting Period.

(F)     The entire premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

(G)     The limit of liability for the Extended Reporting Period is part of and not in addition to any maximum aggregate limit of liability for the **Policy Year** immediately preceding the Extended Reporting Period.

CHUBB&#39; Chubb Group of Insurance Companies
202B Hall&#39;s Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*General Terms and Conditions*

---

**VI.    CHANGES IN EXPOSURE**

(A)    **Acquisition of Another Organization**

(1)    If before or during the **Policy Period** an **Organization** acquires voting rights in another entity such that the acquired entity becomes a **Subsidiary**,

(2)    then coverage shall be provided for such **Subsidiary** and its **Insureds** with respect to any:

(a)    **Liability Coverage Part**, solely for **Claims** for **Wrongful Acts** after such acquisition; or

(b)    **Non-Liability Coverage Part**, solely after the effective date of such acquisition subject to the Liability for Prior Losses section of such **Non-Liability Coverage Part**.

(B)    **Cessation of Subsidiaries**

(1)    If before or during the **Policy Period** an **Organization** ceases to be a **Subsidiary**,

(2)    then with respect to any:

(a)    **Liability Coverage Part**, coverage for such **Subsidiary** and its **Insureds** shall continue until termination of this Policy in accordance with Section VI(C), Conversion of Coverage Under Certain Circumstances, or Section X, Termination of Policy, whichever occurs first, but only for **Claims** for **Wrongful Acts** while such **Organization** was a **Subsidiary**; or

(b)    **Non-Liability Coverage Part**, such **Subsidiary** and its **Insureds** shall cease to be **Insureds** as of the effective date of such cessation and coverage under this Policy shall apply as provided in such **Non-Liability Coverage Part**.

(C)    **Conversion of Coverage Under Certain Circumstances**

(1)    If during the **Policy Period** any of the following events occur:

(a)    another entity, person or group of entities or persons acting in concert, acquires more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees, members of the Board of Managers or management committee members of the **Parent Organization**;

(b)    the acquisition of all or substantially all of the **Parent Organization's** assets, by another entity, person or group of entities or persons acting in concert, or the merger of the **Parent Organization** into or with another entity such that the **Parent Organization** is not the surviving entity; or

(c)    the **Parent Organization** emerges from bankruptcy as of the effective date stated in the plan of reorganization,

(2)    then:

(a)    any applicable coverage under this Policy with respect to:

(i)    any **Liability Coverage Part**, shall continue until the expiration of the current **Policy Period**, solely for **Claims** for **Wrongful Acts** prior to such event;

(ii)    the Crime Coverage Part, shall terminate subject to Exclusions III(C), Loss Sustained Option, or III(D), Loss Discovered Option, of such Coverage Part;

(iii)    the Kidnap Ransom and Extortion Coverage Part, shall terminate subject to Exclusion III(A)(9), Notice, of such Coverage Part;

(iv)    the Workplace Violence Coverage Part, shall terminate subject to Exclusion III(E) Notice, of such Coverage Part; or

(v)    Insuring Clauses (B), Privacy Notification and Crisis Management Expenses Coverage; (C), Reward Expenses Coverage; (D), E-Business Interruption and

CHUBB° Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*General Terms and Conditions*

---

Extra Expenses Coverage; (E), E-Threat Expenses Coverage and (F), E-Vandalism Expenses Coverage, of the CyberSecurity Coverage Part, shall continue until the expiration of the current **Policy Period** solely for **Expense** first incurred prior to such event;

(b)  the **Parent Organization** shall give written notice of such event to the Company as soon as practicable together with such information as the Company may require; and

(c)  the entire premium for this Policy shall be deemed fully earned as of the effective date of such event.

---

**VII.   SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES**

With respect to the **Liability Coverage Parts**, coverage under this Policy shall extend to **Claims** for **Wrongful Acts** of an **Insured Person** made against:

(A)  the lawful spouse or domestic partner of such **Insured Person** solely by reason of such spouse or domestic partner's status as a spouse or domestic partner, or such spouse or domestic partner's ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**; or

(B)  the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased, or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is legally incompetent, insolvent or bankrupt,

provided that no coverage afforded by this Section VII shall apply with respect to any loss arising from an act, error or omission by an **Insured Person's** spouse, domestic partner, estate, heirs, legal representatives or assigns.

---

**VIII.  SUBROGATION**

In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery. As a condition precedent to the Company's payment under this Policy, the **Insureds** agree to execute all papers required and shall take all reasonable actions to secure and preserve such rights, including the execution of such documents necessary to enable the Company to effectively bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

---

**IX.    NOTICE**

(A)  Notice to the Company of any **Claim**, **Potential Claim**, **Voluntary Program Notice** or circumstances under any **Liability Coverage Part**, or any **Coverage Event** under any **Non-Liability Coverage Part**, shall be deemed notice under the Policy in its entirety.

(B)  All notices to the Company under this Policy of any **Claim**, **Potential Claim**, **Voluntary Program Notice** or circumstances under any **Liability Coverage Part**, or any **Coverage Event** under any **Non-Liability Coverage Part**, shall be given in writing to one of the following addresses:

(1)  specialtyclaims@chubb.com; or

(2)  Attn: Claims Department
Chubb Group of Insurance Companies
82 Hopmeadow St.
Simsbury, CT 06070-7683

(C)    All other notices to the Company under this Policy shall be given in writing addressed to:

> Attn: Chubb Underwriting Department
> Chubb Group of Insurance Companies
> 202B Hall's Mill Road
> Whitehouse Station, NJ 08889

(D)    Any notice described above shall be effective on the date of receipt by the Company.

## X.    TERMINATION OF POLICY

(A)    This Policy shall terminate at the earliest of the following times:

(1)    upon receipt by the Company of written notice of termination from the **Parent Organization**, provided that this Policy may not be terminated by the **Parent Organization** after the effective date of any event described in Section VI(C), Conversion of Coverage Under Certain Circumstances;

(2)    upon expiration of the **Policy Period** set forth in Item 2 of the GTC Declarations;

(3)    twenty (20) days after receipt by the **Parent Organization** of a written notice of termination from the Company based upon nonpayment of premium, unless the premium is paid within such twenty (20) day period; or

(4)    at such other time as may be agreed upon by the Company and the **Parent Organization**.

(B)    The Company shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Parent Organization**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

## XI.    BANKRUPTCY

Bankruptcy or insolvency of an **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.

## XII.    COORDINATION OF COVERAGE

Any **Loss** covered under more than one **Liability Coverage Part** shall be first covered under the CyberSecurity Coverage Part, if applicable, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** which is not paid under the CyberSecurity Coverage Part shall then be covered under the Employment Practices Coverage Part, if applicable, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** otherwise covered under any other applicable **Liability Coverage Part** which is not paid under the CyberSecurity or Employment Practices Liability Coverage Parts shall be covered under such other **Liability Coverage Part**, subject to the terms, conditions and limitations of such **Liability Coverage Part**.

Any loss covered under the CyberSecurity Coverage Part and the Kidnap Ransom and Extortion Coverage Part shall be first covered under the Kidnap Ransom and Extortion Coverage Part, subject to its terms, conditions and limitations. Any remaining portion of such loss otherwise covered under the CyberSecurity Coverage Part which is not paid under the Kidnap Ransom and Extortion Coverage Part shall be covered under the CyberSecurity Coverage Part, subject to its terms, conditions and limitations.

**CHUBB** Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*General Terms and Conditions*

---

**XIII.   VALUATION AND FOREIGN CURRENCY**

All premiums, limits, retentions, loss and other amounts under this Policy are expressed and payable in the currency of the United States of America.  Except as otherwise provided in this Policy, if a judgment is rendered, a settlement is denominated or any element of loss under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of loss is due, respectively.

---

**XIV.   ACTION AGAINST THE COMPANY**

No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

---

**XV.   ROLE OF PARENT ORGANIZATION**

By acceptance of this Policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: (A) the payment of premiums and the receiving of any return premiums that may become due under this policy; (B) the negotiation, agreement to and acceptance of endorsements; and (C) the giving or receiving of any notice provided for in this Policy (except the giving of notice to apply for an Extended Reporting Period as provided in Section V, Extended Reporting Period, the giving of notice as provided in Section VIII, Proof of Loss and Legal Proceedings, of the CyberSecurity Coverage Part and the giving of notice of **Claim**, **Potential Claim**, **Voluntary Program Notice** or circumstances as provided in the Reporting section of the applicable **Liability Coverage Part**).   Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

---

**XVI.   ALTERATION AND ASSIGNMENT**

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized representative of Chubb, a division of Federal Insurance Company.

---

**XVII.   TERRITORY**

This Policy shall apply anywhere in the world.

---

**XVIII.   HEADINGS**

The descriptions in the headings and subheadings of this Policy are solely for convenience and form no part of the terms and conditions of coverage.

---

**XIX.   COMPLIANCE WITH TRADE SANCTIONS**

This insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the Company from providing insurance.

---

# Schedule of Forms

To be attached to and form part of
Policy No.   8251-9627

Company:   Federal Insurance Company

Issued to:   SXSW LLC

ForeFront Portfolio 3 0 General Terms and Conditions Policy

14-02-17865 (1/11 ed.)

14-02-22814 (12/17 ed.)

ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

14-02-17866 (1/11 ed.)

14-02-18059 (5/11 ed.)

14-02-19646 (2/13 ed.)

14-02-21084 (3/14 ed.)

14-02-21379 (12/14 ed.)

14-02-22161 (9/16 ed.)

ForeFront Portfolio 3 0 Employment Practices Liability Coverage Part

14-02-17292 (7/11 ed.)

14-02-17867 (1/11 ed.)

14-02-21810 (5/15 ed.)

14-02-3206 F3 (5/11 ed.)

ForeFront Portfolio 3.0 CyberSecurity Coverage Part Federal

14-02-17871 (1/11 ed.)

14-02-22815TX (10/17 ed.)

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement/rider: August 17, 2019          Federal Insurance Company

                                                 Endorsement/Rider No. 1

                                                 To be attached to and
                                                 form a part of Policy No. 8251-9627

Issued to:  SXSW LLC

---

TEXAS AMENDATORY ENDORSEMENT
TO THE GENERAL TERMS AND CONDITIONS

In consideration of the premium charged, it is agreed that:

(1)     Section V, Extended Reporting Period, is amended by adding the following parenthetical immediately
        after the term "Additional Period":

        "(which period shall be one (1) year or such other period as the **Parent Organization** and the
        Company agree upon)"

(2)     In addition to the extension of coverage offered in Section V, Extended Reporting Period, the **Parent
        Organization** shall have the right to an automatic extended reporting period of thirty (30) days in
        which to report **Claims** for **Wrongful Acts** committed, attempted or allegedly committed or attempted
        before the earlier of the effective date of termination or nonrenewal, or with respect to an Extended
        Reporting Period purchased after an event described in Subsection (C) of Section VI, Conversion of
        Coverage Under Certain Circumstances, the effective date of such merger, consolidation, acquisition,
        or emergence from bankruptcy.  The extension of coverage described in Section V, Extended
        Reporting Period, if purchased, shall begin after the expiration of the automatic extended reporting
        period described above and Section V shall be deemed amended to the extent necessary to comply
        with this paragraph.

(3)     This policy shall not be non-renewed based solely on the fact that the policyholder is an elected
        official.

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this
Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence
over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent
with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement
provisions comply with the applicable insurance laws of the state of Texas.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.


_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement/rider: August 17, 2019          Federal Insurance Company

                                                 Endorsement/Rider No. 2

                                                 To be attached to and
                                                 form a part of Policy No. 8251-9627

Issued to:  SXSW LLC

---

CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

In consideration of the premium charged, it is agreed that:

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk
    Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the
    Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such
    losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro
    rata allocation in accordance with procedures established by the Secretary of the Treasury.

    "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance
    with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such
    Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the
    following:

    1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of
        insurance subject to the Terrorism Risk Insurance Act; and

    2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is
        committed by an individual or individuals as part of an effort to coerce the civilian population of the
        United States or to influence the policy or affect the conduct of the United States Government by
        coercion.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism
    exclusion, do not serve to create coverage for any "loss" that is otherwise excluded under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

**CHUBB** **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Directors & Officers and Entity Liability*
*Coverage Part*

**D&O DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**NOTICE: THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.** **Parent Organization:** SXSW LLC

**Item 2.** **Maximum Aggregate Limit of Liability for this Coverage Part:** $1,000,000.00

**Item 3.** **Optional Coverage Applicable to this Coverage Part:**

⬜ Additional Limit of Liability Dedicated for Executives

**Item 4.** **Retentions:**

(A) Insuring Clause (A)
Individual Non-Indemnified Liability Coverage: None

(B) Insuring Clause (B)
Individual Indemnified Liability Coverage: $25,000.00

(C) Insuring Clause (C)
Entity Liability Coverage: $25,000.00

**Item 5.** **Pending or Prior Proceedings Dates:**

(A) Insuring Clauses (A) and (B): August 17, 2018

(B) Insuring Clause (C): August 17, 2018

**CHUBB**   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Directors & Officers and Entity Liability*
*Coverage Part*

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

## I.   INSURING CLAUSES

### Insuring Clause (A):  Individual Non-Indemnified Liability Coverage

(A)   The Company shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made against the **Insured Person** during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent that such **Loss** is not indemnified by an **Organization**.

### Insuring Clause (B):  Individual Indemnified Liability Coverage

(B)   The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against an **Insured Person** during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent the **Organization** indemnifies the **Insured Person** for such **Loss** as permitted or required by law.

### Insuring Clause (C):  Entity Liability Coverage

(C)   The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period if applicable.

## II.   SECURITYHOLDER DERIVATIVE DEMAND EVALUATION COVERAGE

The Company shall pay, on behalf of an **Organization**, **Securityholder Derivative Demand Evaluation Costs** incurred with the Company's prior written consent which the **Organization** becomes legally obligated to pay on account of any securityholder derivative demand that is first made during the **Policy Period**, or, if exercised, during the Extended Reporting Period, for **Wrongful Acts** by an **Executive** before or during the **Policy Period** in an aggregate amount not to exceed $500,000 per **Policy Period** which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the D&O Declarations and no Retention shall apply to such amount.

## III.   ADDITIONAL LIMIT OF LIABILITY DEDICATED FOR EXECUTIVES (Optional)

(A)   Notwithstanding anything in this Policy to the contrary, the Additional Limit of Liability Dedicated For Executives, if purchased as set forth in Item 3 of the D&O Declarations, shall be an additional Limit of Liability in an amount not to exceed $500,000, which amount is in addition to, and not part of, the Maximum Aggregate Limit of Liability set forth in Item 2 of the D&O Declarations.

(B)   The Additional Limit of Liability Dedicated For Executives is available solely for **Loss** resulting from any **Claim** against any **Executive** covered under Insuring Clause (A), Individual Non-Indemnified Liability Coverage.

(C)   The Additional Limit of Liability Dedicated For Executives shall be excess of any insurance available that is specifically excess to this Coverage Part and such excess insurance must be completely exhausted by payment of loss, damages or defense costs thereunder before the Company shall have any obligation to make any payment on account of the Additional Limit of Liability Dedicated For Executives.

**CHUBB**  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Directors & Officers and Entity Liability*
*Coverage Part*

---

IV.   **DEFINITIONS**

For purposes of this Coverage Part:

**Application** means:

(A)   any portion of an application given to the Company for this Policy, including any attachments, written information and materials provided to the Company by or on behalf of an **Insured** for the purposes of the Company's underwriting of this Coverage Part; and

(B)   any warranty provided to the Company within the past three years in connection with any coverage part or policy of which this Coverage Part is a renewal or replacement.

**Claim** means:

(A)   when used in reference to the coverage provided by Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, or (B), Individual Indemnified Liability Coverage, any:

(1)   written demand first received by an **Insured** for monetary or non-monetary relief, including injunctive relief;

(2)   civil proceeding commenced by the service of a complaint or similar pleading;

(3)   criminal proceeding commenced by: (a) an arrest, or (b) a return of an indictment, information or similar document;

(4)   formal administrative or formal regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

(5)   arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document; or

(6)   official request for **Extradition**,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

(7)   civil, criminal, administrative or regulatory investigation or interview of an **Insured Person** for a **Wrongful Act** once such **Insured Person** is identified in writing by any investigating authority as a target of such investigation or interview, including when such **Insured Person** is served with a target letter or similar document; or

(8)   written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in Paragraphs (A)(1) through (A)(7) above;

(B)   solely when used in reference to the coverage provided by Insuring Clause (A), Individual Non-Indemnified Liability Coverage, any service of a subpoena or other similar written request upon an **Insured Person** compelling witness testimony or document production in connection with the matters described in Paragraphs (A)(1) through (A)(7) above or with any equivalent action against an **Organization** or **Outside Entity**; in which case, the Company shall pay the **Defense Costs** incurred solely by such **Insured Person** in responding to such subpoena or written request; or

(C)   when used in reference to the coverage provided by Insuring Clause (C), Entity Liability Coverage, any:

(1)   written demand first received by an **Insured** for monetary damages or non-monetary relief, including injunctive relief;

(2)   civil proceeding commenced by the service of a complaint or a similar pleading;

(3)   criminal proceeding commenced by a return of an indictment, information or similar document;

(4)   formal administrative or formal regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document; but only while such proceeding is also pending against an **Insured Person**; or

CHUBB'  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0$^{SM}$*
*Directors & Officers and Entity Liability*
*Coverage Part*

(5)     arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom; or

(6)     written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in Paragraph (C)(1) through (C)(5) above.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds.

**Employee** means any natural person whose labor or service is, was or will be engaged and directed by an **Organization**, including a part-time, seasonal, leased and temporary employee, intern or volunteer. **Employee** shall not include any independent contractor.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Health Insurance Portability and Accountability Act of 1996), the English Pension Scheme Act 1993 or the English Pensions Act 1995; all as amended; any similar statutory or common law anywhere in the world; or any rule or regulation promulgated under any such Act or law.

**Executive** means any natural person who is, was or will be:

(A)     a duly elected or appointed director, officer, member of the Advisory Board or in-house general counsel of any **Organization** incorporated in the United States of America;

(B)     a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; (2) member of the Advisory Board; or (3) in-house general counsel, of any **Organization** formed as a limited liability company in the United States of America; or

(C)     a holder of an equivalent position to those described in Subsections (A) or (B) above in any **Organization** incorporated, formed or organized anywhere in the world.

**Extradition** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation, or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

**Financial Impairment** means the status of an **Organization** resulting from:

(A)     the appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(B)     such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country,

provided that the court or other judicial or administrative body overseeing the receivership, conservatorship, liquidation, rehabilitation, bankruptcy or equivalent proceeding has denied a request by the **Organization**, or other party determined to have standing, for authorization of the **Organization** to indemnify an **Insured Person** for **Loss**; provided further that, the Company may, in its sole discretion, waive the foregoing requirement.

**Insured** means any **Organization** and any **Insured Person**.

**Insured Person** means any **Executive** or **Employee** of an **Organization** acting either in his or her capacity as such or in an **Outside Capacity**.

CHUBB®   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*Directors & Officers and Entity Liability*
*Coverage Part*

**Loss** means the amount which an **Insured** becomes legally obligated to pay as a result of any **Claim**, including:

(A)   compensatory damages;

(B)   punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or to the **Claim** giving rise to such damages;

(C)   civil fines or civil penalties assessed against an **Insured Person**, including civil penalties assessed against an **Insured Person** pursuant to 15 U.S.C. §78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act), if and to the extent such fines or penalties are insurable under the law of the jurisdiction in which such fines or penalties are assessed;

(D)   judgments, including pre-judgment and post-judgment interest;

(E)   settlements; and

(F)   **Defense Costs**,

provided that **Loss** does not include any portion of such amount that constitutes any:

(1)   cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief;

(2)   amount uninsurable under the law pursuant to which this Coverage Part is construed;

(3)   tax, except solely for the purposes of Insuring Clause (A), Individual Non-Indemnified Liability Coverage, any tax imposed upon an **Insured Person** in his or her capacity as such in connection with any bankruptcy, receivership, conservatorship, or liquidation of an **Organization**, to the extent that such tax is insurable under the law pursuant to which this Coverage Part is construed;

(4)   amount (other than **Securityholder Derivative Demand Evaluation Costs**) incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that was not then a **Claim** even if (a) such amount also benefits the defense of a covered **Claim**; or (b) such action, proceeding or demand subsequently gives rise to a **Claim**;

(5)   amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets; or

(6)   cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**.

**Outside Capacity** means service by an **Insured Person** in an **Outside Entity** as any: (A) director or officer; (B) manager or member of the Board of Managers; (C) trustee, regent, governor; or (D) equivalent executive position of any of the foregoing, but solely during the time that such service is with the knowledge and express consent of an **Organization**.

**Outside Entity** means:

(A)   any non-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an entity described in Section 501(c)(3), 501(c)(4), 501(c)(7) or 501(c)(10) of the Internal Revenue Code of 1986, as amended, or any other entity organized for a religious or charitable purpose under any non-profit organization act or statute; or

(B)   any other entity specifically added as an **Outside Entity** by written endorsement attached to this Coverage Part,

that is not an **Organization**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**CHUBB®**  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0<sup>SM</sup>*
*Directors & Officers and Entity Liability*
*Coverage Part*

**Professional Services** means services which are performed for others for a fee.

**Securityholder Derivative Demand Evaluation Costs** means reasonable costs, fees and expenses (other than regular or overtime wages, salaries, fees, or benefits of the directors, officers or employees of an **Organization**) incurred by an **Organization** (including its Board of Directors or any committee of its Board of Directors) solely with respect to an evaluation required to determine whether it is in the best interest of the **Organization** to prosecute the claims alleged in a securityholder derivative demand and prior to any **Claim** first made in connection with such securityholder derivative demand. In no event shall **Securityholder Derivative Demand Evaluation Costs** include any costs, fees or expenses incurred in a **Claim**.

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by:

(A)     for purposes of coverage under Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, and (B), Individual Indemnified Liability Coverage, any **Insured Person** while acting in his or her capacity as such or any matter claimed against any **Insured Person** solely by reason of his or her status as such; or

(B)     for purposes of coverage under Insuring Clause (C), Entity Liability Coverage, any **Organization**.

## V.    EXCLUSIONS

### (A)    EXCLUSIONS APPLICABLE TO ALL INSURING CLAUSES

The Company shall not be liable for **Loss** on account of any **Claim**:

(1)     <u>Prior Notice</u>
based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2(A), Policy Period, of the GTC Declarations, was the subject of any notice accepted under any policy or coverage part of which this Coverage Part is a direct or indirect renewal or replacement;

(2)     <u>Pending or Prior Proceedings</u>
based upon, arising from or in consequence of any written demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Proceedings Date set forth in Item 5 of the D&O Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(3)     <u>Bodily Injury/Property Damage</u>
for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed, provided that this Exclusion (A)(3) shall not apply to **Loss** for any mental anguish, humiliation or emotional distress asserted in an employment-related **Claim** afforded coverage under Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, or (B), Individual Indemnified Liability Coverage;

(4)     <u>Pollution</u>
based upon, arising from or in consequence of any:

(a)     discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

(b)     treatment, removal or disposal of any **Pollutants**; or

(c)     regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

including any **Claim** for financial loss to an **Organization**, its securityholders or its creditors based upon, arising from or in consequence of any matter described in Subparagraphs (a), (b) or (c) of this Exclusion (A)(4),

**CHUBB®**    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Directors & Officers and Entity Liability*
*Coverage Part*

provided that this Exclusion (A)(4) shall not apply to **Loss** which an **Insured Person** becomes legally obligated to pay and for which such **Insured Person** is not indemnified by an **Organization** or **Outside Entity** either because the **Organization** or **Outside Entity** is not permitted by common or statutory law to grant such indemnification or because of the **Financial Impairment** of the **Organization** or **Outside Entity**, provided that this exception shall only apply to **Claims** first made during the **Policy Period** or the Extended Reporting Period, if applicable;

(5)  ERISA
for any violation of the responsibilities, obligations or duties imposed by **ERISA**;

(6)  Insured versus Insured
   (a)  brought by an **Organization** against any other **Organization**;

   (b)  brought by an **Organization** against an **Insured Person** of such **Organization**, provided that this Subparagraph (b) shall not apply to any **Claim** brought:

      (i)  outside the United States of America or Canada;

      (ii)  in the event of **Financial Impairment** of the **Organization**; or

      (iii)  as a securityholder derivative action;

   (c)  brought by an **Insured Person** in any capacity against an **Insured,** except with respect to a **Claim**:

      (i)  for employment-related **Wrongful Acts** against an **Insured Person**;

      (ii)  brought by an **Employee**, other than an **Executive**, in his or her capacity as a shareholder of an **Organization**;

      (iii)  for contribution or indemnity arising from another **Claim** otherwise covered under this Policy;

      (iv)  brought by an **Executive** who has ceased serving in his or her capacity as an **Executive** for at least one (1) year; or

      (v)  brought by a whistleblower pursuant to any federal, state, local or foreign law against an **Insured Person**;

(7)  Publicly Traded Securities
based upon, arising from or in consequence of (a) any public offering of securities issued by any **Organization** or **Outside Entity**, or (b) the purchase or sale of any publicly traded securities for which the **Organization** is subject to the Securities Exchange Act of 1934, provided that this Exclusion (A)(7) shall not apply to **Loss**:

   (i)  based upon, arising from or in consequence of an offering, sale or purchase of securities that are not required to be registered under the Securities Act of 1933 or any similar foreign law that regulates the offering, sale or purchase of securities;

   (ii)  on account of a **Claim** made by any securityholder of an **Organization** for the failure of the **Organization** to undertake or complete the initial public offering or sale of securities of the **Organization**; or

   (iii)  for any **Wrongful Act** relating to an **Organization's** preparation for any public offering, including any road show presentation to potential investors or other similar presentation, made by the **Organization** and its **Executives** via any medium in connection with such public offering, if such offering does not occur;

(8)  Outside Entity versus Insured
for a **Wrongful Act** by an **Insured Person** while serving in an **Outside Capacity** where such **Claim** is brought:

**CHUBB®**  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Directors & Officers and Entity Liability*
*Coverage Part*

(a)    by an **Outside Entity** against an **Insured Person** who is acting in his or her **Outside Capacity** in such **Outside Entity** at the time such **Claim** is first made, except with respect to a **Claim** brought as a securityholder derivative action; or

(b)    by a director, officer, trustee, governor or equivalent position of the **Outside Entity** in any capacity against an **Insured,** except with respect to a **Claim** for contribution or indemnity arising from another **Claim** otherwise covered under this Policy; or

(9)    <u>Conduct</u>
based upon, arising from or in consequence of:

(a)    any deliberately fraudulent act or omission, or any willful violation of any statute or regulation, by an **Insured**, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes such an act or omission or violation; or

(b)    an **Insured** having gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes the gaining of such profit, remuneration or advantage,

provided that:

(i)    no conduct pertaining to any **Insured Person** shall be imputed to any other **Insured Person**; and

(ii)    any conduct pertaining to any past, present, or future chief financial officer, chief executive officer or chief operating officer (or any equivalent position to any of the foregoing) of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**.

**(B)**    **EXCLUSIONS APPLICABLE TO INSURING CLAUSE (C), ENTITY LIABILITY COVERAGE, ONLY**

The Company shall not be liable for **Loss** on account of any **Claim** against an **Organization**:

(1)    <u>Contract</u>
based upon, arising from or in consequence of any liability in connection with any oral or written contract or agreement to which an **Organization** is a party, provided that this Exclusion (B)(1) shall not apply to the extent that such **Organization** would have been liable in the absence of such contract or agreement;

(2)    <u>Employment Practices</u>
based upon, arising from or in consequence of any employment-related **Wrongful Act**;

(3)    <u>Third Party Discrimination or Sexual Harassment</u>
based upon, arising from or in consequence of any discrimination against, or sexual harassment of any third party;

(4)    <u>Antitrust</u>
based upon, arising from or in consequence of price fixing, restraint of trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provision of any federal, state, or local statutory law or common law anywhere in the world;

(5)    <u>Personal Injury</u>
based upon, arising from or in consequence of any libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium, or

CHUBB'   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**[SM]
*Directors & Officers and Entity Liability*
*Coverage Part*

---

 (6) Product Defect/Intellectual Property/Professional Services
  based upon, arising from or in consequence of:

  (a) any malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture;

  (b) any infringement of copyright, patent, trademark, trade name, trade dress, or service mark; any misappropriation of ideas, trade secrets or  other intellectual property rights; any false patent marking; or any violation of a federal, state, local or foreign intellectual property law, or a rule or regulation promulgated under any such intellectual property law; or

  (c) the rendering of, or failure to render, any **Professional Services** by an **Insured**,

  provided that this Exclusion (B)(6) shall not apply to **Loss** on account of any securities **Claim**, securityholder derivative demand or securityholder derivative action.

---

## VI. REPORTING

 (A) An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** as soon as practicable after the chief executive officer, chief financial officer, in-house general counsel, or any person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**, but in no event later than:

  (1) if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

  (2) the expiration date of the Extended Reporting Period, if applicable,

  provided that if the Company sends written notice to the **Parent Organization** stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

 (B) If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Year** in which such circumstances were first reported to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than 90 days after the chief executive officer, chief financial officer, in-house general counsel or any person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

 (C) An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company such information, assistance and cooperation as the Company may reasonably require and shall include in any notice under Subsections (A) or (B) above a description of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances or alleged **Wrongful Act**.

CHUBB®  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**[SM]
*Directors & Officers and Entity Liability*
*Coverage Part*

---

**VII.    RETENTION AND PRESUMPTIVE INDEMNIFICATION**

(A)    The Company's liability under this Coverage Part shall apply only to that part of each **Loss** which is in excess of the applicable Retention set forth in Item 4 of the D&O Declarations, and such Retention shall be borne by the **Insureds** uninsured and at their own risk.

(B)    If different parts of a single **Claim** are subject to different Retentions in different Insuring Clauses within this Coverage Part, the applicable Retentions shall be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(C)    If different parts of a single **Claim** are subject to different Retentions in different Coverage Parts, the applicable Retentions shall be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(D)    **Claims** shall be subject to the Retention(s) applicable to the **Policy Year** during which such **Claims** are first made or first deemed to have been made.

(E)    If an **Organization** fails or refuses, other than for reason of **Financial Impairment**, to indemnify an **Insured Person** for **Loss** to the fullest extent permitted by statutory or common law, then any payment by the Company of such **Loss** shall be excess of the Insuring Clause (B), Individual Indemnified Liability Coverage, Retention set forth in Item 4 of the D&O Declarations.

(F)    For the purposes of determining an **Organization's** indemnification obligation to any Advisory Board Member, each Advisory Board Member shall be deemed a director or officer of such **Organization**. Accordingly, the **Organization** shall be deemed to have granted indemnification to each Advisory Board Member to the fullest extent permitted by statutory or common law to the same extent as any director or officer of the **Organization**.

---

**VIII.    DEFENSE AND SETTLEMENT**

(A)    The Company shall have the right and duty to defend any **Claim** covered by this Coverage Part. Coverage shall apply even if any of the allegations are groundless, false or fraudulent. The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(B)    The Company may make any investigation it deems necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** it deems appropriate.

(C)    No **Insured** shall settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's written consent, which shall not be unreasonably withheld. The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

(D)    The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the D&O Declarations or the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations, if applicable, has been exhausted by the payment of **Loss** and the premium shall be deemed fully earned.

(E)    The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agrees to do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

(F)    The Company shall not seek repayment from an **Insured Person** of any **Defense Costs** paid by the Company that are deemed uninsured pursuant to Exclusion (A)(9), Conduct, unless the applicable determination standard (whether a final, non-appealable adjudication or other determination standard) set forth in such Exclusion has been met.

**CHUBB** Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Directors & Officers and Entity Liability*
*Coverage Part*

## IX.   ALLOCATION

If an **Insured** who is afforded coverage for a **Claim** incurs an amount consisting of both **Loss** that is covered by this Coverage Part and also loss that is not covered by this Coverage Part because such **Claim** includes both covered and uncovered matters, then coverage shall apply as follows:

(A)   **Defense Costs**:  one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on account of such **Claim** shall be covered **Loss**, provided that the foregoing shall not apply with respect to any **Insured** for whom coverage is excluded pursuant to Exclusion (B)(2), Employment Practices, or Subsection XIII(C), Representations and Severability.  Such **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based on the relative legal exposures of the parties to such matters; and

(B)   loss other than **Defense Costs**: all remaining loss incurred by such **Insured** from such **Claim** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

## X.   PRIORITY OF PAYMENTS

(A)   In the event of **Loss** arising from a **Claim** for which payment is concurrently due under Insuring Clause (A), Individual Non-Indemnified Liability Coverage, and one or more of the other Insuring Clauses of this Coverage Part, the Company shall:

   (1)   first, pay **Loss** for which coverage is provided under Insuring Clause (A), Individual Non-Indemnified Liability Coverage, then

   (2)   with respect to whatever remaining amount of the Limit of Liability is available after payment under Subsection (A) above, pay such **Loss** for which coverage is provided under any other Insuring Clause.

(B)   Except as otherwise provided in Subsection (A) above, the Company may pay covered **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

## XI.   OTHER INSURANCE OR INDEMNITY

(A)   If any **Loss** under this Coverage Part is insured under any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by this Coverage Part), this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

(B)   Any coverage afforded under this Coverage Part for a **Claim** in connection with an **Insured Person** serving in an **Outside Capacity** for an **Outside Entity** shall be specifically excess of any indemnity (other than any indemnity provided by an **Organization**) and insurance available to such **Insured Person** by reason of serving in such **Outside Capacity**.

(C)   If any **Claim** made against an **Insured Person** serving in an **Outside Capacity** gives rise to coverage both under this Coverage Part and under any other coverage part or policy issued by the Company or any subsidiary or affiliate of The Chubb Corporation to any other entity, then any payment under such other coverage part or policy shall reduce any applicable Limit of Liability under this Coverage Part by the amount of such payment.

CHUBB'  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Directors & Officers and Entity Liability*
*Coverage Part*

---

**XII.   SECURITIES TRANSACTIONS**

If, during the **Policy Period**, an **Organization** intends to sell or offers to sell securities that are required to be registered under the Securities Act of 1933, the **Organization** shall, no later than thirty (30) days prior to the effective date of the Registration Statement for such sale or offering, give the Company written notice of the proposed sale or offering and all information requested by the Company relating thereto.  The Company shall provide to the **Organization** a quotation for coverage with respect to such sale or offering, including for **Wrongful Acts** occurring in the course of any "road show" presentation to potential investors or other similar presentation; provided any such coverage offered shall be subject to such other terms, conditions, and limitations of coverage and such additional premium as the Company, in its sole discretion, may require.

---

**XIII.   REPRESENTATIONS AND SEVERABILITY**

(A)   In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the declarations and statements in the **Application** for this Coverage Part.  Such declarations and statements are the basis of the coverage under this Coverage Part and shall be considered as incorporated in and constituting part of this Coverage Part.

(B)   The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**.  With respect to the declarations and statements in such **Application**, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

(C)   However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Coverage Part, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations with respect to:

(1)   any **Insured Person** who knew of such misrepresentations (whether or not such **Insured Person** knew such **Application** contained such misrepresentations) or any **Organization** to the extent it indemnifies any such **Insured Person**; or

(2)   any **Organization** if any past or present chief executive officer or chief financial officer (or any equivalent position to any of the foregoing) of the **Parent Organization** knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations).

(D)   The Company shall not be entitled under any circumstances to void or rescind this Coverage Part with respect to any **Insured**.

---

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: August 17, 2019

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8251-9627

Issued to: SXSW LLC

---

TEXAS AMENDATORY ENDORSEMENT
TO THE DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

In consideration of the premium charged, it is agreed that:

(1)    Subsection (A) of Section XIII, Representations and Severability, of this Coverage Part is deleted and
replaced with the following:

(A)    In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon
the declarations and statements in the **Application** for this Coverage Part.   Such
declarations and statements are the basis of the coverage under this Coverage Part and shall
be considered as incorporated into this Coverage Part.

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this
Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence
over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent
with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement
provisions comply with the applicable insurance laws of the state of Texas.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement: August 17, 2019

Company: Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8251-9627

Issued to: SXSW LLC

---

AMEND BODILY INJURY/PROPERTY DAMAGE EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion (A)(3), Bodily Injury/Property Damage, of this Coverage Part is deleted and replaced with the following:

(3)     Bodily Injury/Property Damage
        based upon, arising from, or in consequence of any bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed, provided that this Exclusion (A)(3) shall not apply to **Loss** for any mental anguish, humiliation or emotional distress asserted in an employment-related **Claim** afforded coverage under Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, or (B), Individual Indemnified Liability Coverage;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: August 17, 2019                   Federal Insurance Company

                                                         Endorsement/Rider No. 3

                                                         To be attached to and
                                                         form a part of Policy No. 8251-9627

Issued to:  SXSW LLC

---

FALSE ADVERTISING ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Subsection (B) of Section V, Exclusions, of this Coverage Part is amended to add the following:

       False Advertising
       based upon, arising from, or in consequence of any false advertising, misrepresentation in advertising or
       unfair or deceptive trade practices, with respect to the advertising of the **Insured's** own goods,
       publications or services; provided that this Exclusion shall not apply to **Loss** on account of any securities
       **Claim**, securityholder derivative demand or securityholder derivative action.

(2)    Solely with respect to the coverage afforded under this endorsement, Subsection (A) of Section IX,
       Allocation, of this Coverage Part is deleted and replaced with the following:

       (A)    **Defense Costs**:  one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on
              account of such **Claim** shall be covered **Loss**, provided that the foregoing shall not apply with respect
              to any **Insured** for whom coverage is excluded pursuant to the Exclusion in paragraph (1) of this
              endorsement, False Advertising, Exclusion (B)(2), Employment Practices, or Subsection XIII(C),
              Representations and Severability.  Such **Defense Costs** shall be allocated between covered **Loss**
              and non-covered loss based on the relative legal exposures of the parties to such matters; and

The title and any headings in this endorsement are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: August 17, 2019

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8251-9627

Issued to:  SXSW LLC

---

JOBS ACT ENDORSEMENT

In consideration of the premium charged, it is agreed that

(1)     Exclusion (A)(7), Publicly Traded Securities, of this Coverage Part shall not apply to **Loss** on account
of any **Claim**:

   (A)     based upon, arising from or in consequence of any general solicitation or general advertising
   by or on behalf of any **Organization** permitted pursuant to Title II, Access to Capital for Job
   Creators, of the JOBS Act (as defined below);

   (B)     based upon, arising from or in consequence of any offering, sale or purchase of securities
   that qualifies for a Securities Act registration exemption created pursuant to Title III,
   Crowdfunding, of the JOBS Act; or

   (C)     based upon, arising from or in consequence of any offering, sale or purchase of securities
   that qualifies for a Securities Act registration exemption created pursuant to Title IV, Small
   Company Capital Formation, of the JOBS Act ("Title IV Small Company Capital Formation
   Claim").

(2)     The Company's maximum aggregate Limit of Liability for **Loss** on account of all Title IV Small
Company Capital Formation Claims shall be $250,000 which amount shall be part of, and not in
addition to, the Company's Maximum Aggregate Limit of Liability for this Coverage Part set forth in
Item 2 of the D&O Declarations.

(3)     For purposes of this Endorsement, JOBS Act means the Jumpstart Our Business Startups Act, any
amendments thereto and any rules or regulations promulgated thereunder.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: August 17, 2019          Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8251-9627

Issued to:  SXSW LLC

---

SERVICE INDUSTRY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from, or in consequence of the rendering of, or failure to render, any **Professional Services** by an **Insured**; provided that this Exclusion shall not apply to any **Loss** on account of any securities **Claim**, securityholder derivative demand, securityholder derivative action or **Specific Management Claim** (as defined in Paragraph (2) of this endorsement).

(2)     Section IV, Definitions, of this Coverage Part, is amended to include the following definition:

**Specific Management Claim** means any **Claim** made against an **Executive** for a **Wrongful Act** by such **Executive** in connection with the **Executive's** management of any **Organization** or **Subsidiary**, of an **Organization**.  However, **Specific Management Claim** shall not mean, and in no event shall any coverage be afforded herein for, any **Claim** made against an **Executive** for a **Wrongful Act** by such **Executive** in the direct offering of, or in supervising or assisting an **Insured Person** in direct offering of, any **Professional Services**.

(3)     Exclusion (B)(6)(c), Professional Services, of this Coverage Part is deleted.

(4)     Solely with respect to the coverage afforded under this endorsement, Section XI, Other Insurance or Indemnity, of this Coverage Part is amended to add the following:

Subject to the provisions of this endorsement, no coverage shall be available for any **Loss** until after any or all coverage available under any policy providing professional liability or errors and omissions coverage has been exhausted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: August 17, 2019

Federal Insurance Company

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 8251-9627

Issued to:  SXSW LLC

---

AMEND DEFENSE AND SETTLEMENT ENDORSEMENT
(OPTION TO TENDER DEFENSE)

In consideration of the premium charged, it is agreed that:

(1)     Unless the **Insured** has tendered the defense of a **Claim** to the Company pursuant to paragraph (3)
of this Endorsement, Section VIII, Defense and Settlement, of this Coverage Part (including any
amendment by Endorsement) is deleted and replaced with the following:

VIII.     DEFENSE AND SETTLEMENT

(A)     The **Insured**:

(1)     shall have the sole duty to defend **Claims** made against the **Insured**;

(2)     agrees not to settle or offer to settle any **Claim**, incur any **Defense Costs** or
otherwise assume any contractual obligation or admit any liability with
respect to any **Claim** without the Company's prior written consent.

(3)     agrees to provide the Company with all information, assistance and
cooperation which the Company may reasonably require and agrees that, in
the event of a **Claim**, the **Insured** shall not do anything that could prejudice
the Company's position or its potential or actual rights of recovery; provided
that the failure of any **Insured Person** to give the Company such
information, assistance or cooperation shall not impair the rights of any other
**Insured Person** under this Coverage Part.

(B)     The Company:

(1)     shall have the right and shall be given the opportunity to effectively associate
with the **Insured** and shall be consulted in advance by the **Insured**,
regarding the investigation, defense and settlement of any **Claim** that
appears reasonably likely to be covered in whole or in part under this
Coverage Part, including selecting appropriate defense counsel and
negotiating any settlement; and

       (2)      shall not be liable for any element of **Loss** incurred in excess of the amount of the applicable Retention, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent, which the Company shall not unreasonably withhold.

   (C)    The Company shall advance covered **Defense Costs** on account of any **Claim** reported pursuant to Section VI, Reporting, on a current basis after receipt by the Company of bills detailing such **Defense Costs** and all other information requested by the Company with respect to such bills until the applicable Limit of Liability set forth in Item 2 of the D&O Declarations has been satisfied.

   (D)    Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this Policy.  However, the Company shall not seek repayment from an **Insured** of advanced **Defense Costs** that are uninsured pursuant to Exclusion V(A)(9), Conduct, unless a final, non-appealable adjudication has occurred.

   (E)    Any advancement of **Defense Costs** by the Company shall reduce the Limit of Liability set forth in Item 2 of the D&O Declarations.  If the Company recovered any such **Defense Costs** paid, the amount of such **Defense Costs** less all costs incurred by the Company to obtain such recovery shall be reinstated to the Limit of Liability set forth in Item 2 of the D&O Declarations.

(2)    Unless the **Insured** has tendered the defense of a **Claim** to the Company pursuant to paragraph (3) of this Endorsement, Section IX, Allocation, of this Coverage Part (including any amendment by Endorsement) is deleted and replaced with the following:

IX.     ALLOCATION

       The **Insureds** and the Company shall use their best efforts to determine an allocation between **Loss** that is covered by this Coverage Part and loss, or any other amount, that is not covered by this Coverage Part based on the relative legal and financial exposures of the covered parties to the covered matters.

(3)    Notwithstanding paragraph (1) of this Endorsement, the **Insureds** shall have the option to tender the defense of any **Claim** to the Company by notifying the Company within a reasonable time after such **Claim** is first received by the **Insured**, but in no event later than thirty (30) days after the date such **Claim** is first received by the **Insured**.

(4)    Unless the **Insured** has tendered the defense of a **Claim** to the Company pursuant to paragraph (3) of this Endorsement, the Defense and Settlement and Allocation provisions in this Endorsement shall supersede and take precedence over any Defense and Settlement and Allocation provisions in any other Endorsement.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative