## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| SXSW, LLC, | § | |
|     *Plaintiff* | § | |
| | § | |
| v. | § | **Case No. 1:21-CV-00900-RP** |
| | § | |
| FEDERAL INSURANCE COMPANY, | § | |
|     *Defendant* | § | |
| | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**  **THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff's Motion for Partial Summary Judgment, filed October 29, 2021 (Dkt. 8); Defendant's Motion for Summary Judgment, filed December 14, 2021 (Dkt. 11); the parties' response and reply briefs; and supplemental briefs filed May 16, 2022 by leave of Court. On January 24, 2022, the District Court referred the Motions to the undersigned Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas. The Court held a hearing on the Motions on May 2, 2022.

### I.    Background

Plaintiff SXSW, LLC ("SXSW"), a Texas limited liability company with its principal place of business in Austin, Texas, brings this insurance coverage suit against its insurer, Federal Insurance Company ("Federal"), an Indiana corporation with its principal place of business in Warren, New Jersey. As explained below, SXSW alleges that Federal has a duty to defend and indemnify it in an underlying suit. The Court summarizes first the relevant portions of the applicable policy, then the facts leading to this litigation.

**A. Policy**

On August 15, 2019, Federal issued an insurance policy to SXSW for the period of August 17, 2019 to August 17, 2020. Dkt. 8-3 (the "Policy"). The Policy includes the following three types of coverage: (1) Directors & Officers and Entity Liability Coverage Part; (2) Employment Practices Liability Coverage Part; and (3) CyberSecurity Coverage Part. *Id.* The Directors & Officers and Entity Liability Coverage (the "D&O Policy") is at issue here. *Id.* at 15-26.

The entity liability provision of the D&O Policy states, in relevant part, that: "The Company shall pay, on behalf of an **Organization, Loss** on account of a **Claim** first made against the **Organization** during the **Policy Period**, or the extended Reporting Period if applicable." *Id.* at 16. Federal is the "Company," and SXSW is the "Organization." *Id.* at 1 ¶ 1(C). For Entity Liability Coverage, the D&O Policy defines "Claim" as any:

> (1) written demand first received by an **Insured** for monetary damages or non-monetary relief, including injunctive relief;
>
> (2) civil proceeding commenced by the service of a complaint or a similar pleading;
>
> (3) criminal proceeding commenced by a return of an indictment, information or similar document;
>
> (4) formal administrative or formal regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document; but only while such proceeding is also pending against an **Insured Person**; or
>
> (5) arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,
>
> Against an **Organization** for a **Wrongful Act** . . . .

*Id.* at 17-18 ¶ IV(C). "Wrongful Act" is defined as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by . . . any **Organization**." *Id.* at 20 ¶ IV.

The D&O Policy defines "Loss" as:

> the amount which an **Insured** becomes legally obligated to pay as a result of any Claim, including:
>
> (A) compensatory damages;
>
> (B) punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or to the **Claim** giving rise to such damages;
>
> (C) civil fines or civil penalties assessed against an **Insured Person**, including civil penalties assessed against an **Insured Person** pursuant to 15 U.S.C. §78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act), if and to the extent such fines or penalties are insurable under the law of the jurisdiction in which such fines or penalties are assessed;
>
> (D) judgments, including pre-judgment and post-judgment interest;
>
> (E) settlements; and
>
> (F) **Defense Costs**,
>
> provided that **Loss** does not include any portion of such amount that constitutes any:
>
> (1) cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief;
>
> (2) amount uninsurable under the law pursuant to which this Coverage Part is construed; . . . .

*Id.* at 19 ¶ IV. "Defense Costs" is defined as "that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses . . . incurred in investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds." *Id.* at 18 ¶ IV.

The D&O Policy also contains:

- a contract exclusion provision ("Contract Exclusion"), which provides that "[t]he Company shall not be liable for **Loss** on account of any **Claim** against

an **Organization** based upon, arising from or in consequence of any liability in connection with any oral or written contract or agreement to which an **Organization** is a party, provided that this Exclusion (B)(1) shall not apply to the extent that such **Organization** would have been liable in the absence of such contract or agreement," *id.* at 22 ¶ IV(B)(1); and

- a Service Industry Endorsement ("Professional Services Exclusion"), which provides in part that: "The Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from, or in consequence of the rendering of, or failure to render, any **Professional Services** by an **Insured**; provided that this Exclusion shall not apply to any **Loss** on account of any securities **Claim**, securityholder derivative demand, securityholder derivative action or **Specific Management Claim** (as defined in Paragraph (2) of this endorsement), *id.* at 32 ¶ 1.

In addition, the D&O Policy contains a Defense and Settlement Endorsement, which states that "the **Insureds** shall have the option to tender the defense of any **Claim** to the Company by notifying the Company within a reasonable time after such **Claim** is first received by the **Insured**, but in no event later than thirty (30) days after the date such **Claim** is first received by the **Insured**." *Id.* at 35 ¶ (3).

## B. Underlying Suit

SXSW organizes a music, film, and interactive festival known as "South by Southwest" in Austin each March. The 2020 South by Southwest Festival was scheduled for March 13 through March 20, 2020. On March 6, 2020, the festival was cancelled by the City of Austin due to the COVID-19 pandemic. Complaint (Dkt. 1) ¶ 9. SXSW did not issue refunds to customers who had purchased wristbands, tickets, passes, and badges ("Credentials") on the basis that the Participation and Credentials Terms and Conditions that customers signed at the time of purchase contained a "no-refund" provision. *Id.* ¶ 11. Instead, SXSW offered to let customers defer their 2020

Credentials to a future year and allowed them to buy Credentials for another year at a fifty percent discount. *Id.*

Approximately eighty percent of customers accepted this offer and granted SXSW a release of claims. Some customers, however, asserted claims against SXSW and requested refunds. For example, customer Steven Leventhal sent a demand to SXSW on April 11, 2020, threating to sue SXSW in Illinois if it did not give him a full refund. *Id.* ¶ 12; Dkt. 11-5 at 7-8 (the "Leventhal Demand"). On April 24, 2020, two other customers, Maria Bromley and Kleber Pauta, filed a class action lawsuit against SXSW and SXSW Holdings, Inc. "on behalf of themselves and all other persons who purchased wristbands, tickets, passes, and badges to the 2020 South by Southwest Festival . . . to recover monies paid for a festival that never occurred." *Bromley v. SXSW, LLC*, 1:20-cv-439-LY (W.D. Tex. Apr. 24, 2020) (the "Underlying Suit"). Leventhal eventually became a member of the proposed class for the Underlying Suit. Dkt. 1 ¶ 13.

Plaintiffs in the Underlying Suit (the "*Bromley* Plaintiffs") asserted claims for breach of contract, unjust enrichment, and conversion. Specifically, the *Bromley* Plaintiffs alleged that SXSW breached its contract with them by refusing to issue them refunds, arguing that SXSW's no-refund provision is "unlawful and unenforceable." *Id.* ¶ 60. For their unjust enrichment claim, the *Bromley* Plaintiffs alleged that, by not issuing refunds, SXSW retained "benefits conferred on it by Plaintiffs and the Class" in a manner "unjust and inequitable under the circumstances." *Id.* ¶¶ 66-67. Finally, for their conversion claim, the *Bromley* Plaintiffs alleged that SXSW "assumed and exercised dominion and control" over the money they had paid for 2020 credentials "to the exclusion of, or inconsistent with, the rights of Plaintiffs and the class." *Id.* ¶ 72. The *Bromley* Plaintiffs sought actual damages, equitable monetary relief, injunctive and declaratory relief, attorneys' fees, and costs. On February 18, 2022, after SXSW filed this coverage suit, the District Court approved a settlement of the Underlying Suit and dismissed the case with prejudice. Dkt. 41.

### C.  Defense Request and Denial

SXSW notified Federal of the Leventhal Demand on April 16, 2020 and of the Underlying Suit on April 27, 2020. Dkt. 1 ¶¶ 40-41 (the "Claim"). On May 18, 2020, Federal notified SXSW that it would "neither defend nor indemnify" SXSW for the Claim. Dkt. 8-4 at 1.

Federal gave two reasons for denying coverage. First, Federal asserted that the Contract Exclusion provision "precludes coverage for the Claim i[n] its entirety because the claimants' allegations are based upon, arise from and are in consequence of liability in connection with a contract to which SXSW is a party." *Id.* at 2. Second, Federal stated that the Professional Services Exclusion bars coverage because SXSW "provided a service – scheduling, overseeing, organizing and managing South by Southwest – for which it collected a fee thus precluding coverage." *Id.*

On October 6, 2021, SXSW filed this action against Federal, alleging breach of contract, breach of implied covenant of good faith and fair dealing, and violations of the Texas Insurance Code. SXSW also seeks a declaratory judgment that Federal owes SXSW a duty to defend and a duty to indemnify in the Underlying Suit.

## II.  Legal Standards

SXSW moves for partial summary judgment under Federal Rule of Civil Procedure 56, arguing that there is no genuine issue of material fact as to Federal's duty to defend it in the Underlying Suit. Dkt. 8. Federal moves for summary judgment on all of SXSW's claims "due to the lack of coverage under the Policy." Dkt. 11 at 7.

### A.  Rule 56

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir.

2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

On cross-motions for summary judgment, the Court reviews each party's motion independently, in the light most favorable to the non-moving party. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

## B. Texas Insurance Law

Whether an insurer has a duty to defend an insured is a question of law. *Siplast, Inc. v. Emps. Mut. Cas. Co.*, 23 F.4th 486, 492 (5th Cir. 2022). In this diversity case, Texas substantive law and federal procedural law apply. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

Under Texas law, "an insurer may have two responsibilities relating to coverage—the duty to defend and the duty to indemnify." *Siplast*, 23 F.4th at 492. These duties are separate, and the duty to defend is broader. "Thus, an insurer may have a duty to defend but, eventually, no obligation to indemnify." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490-91 (Tex. 2008).

Whether an insurer has a duty to defend is determined under the "eight-corners rule." *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 494 (Tex. 2020). "The 'four corners' of the petition and the 'four corners' of the policy together comprise the 'eight corners' that give the rule its name." *Id.* at 494-95.

> The eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from the terms of the policy and the pleadings of the third-party claimant. Resort to evidence outside the four corners of these two documents is generally prohibited.

*GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006).

When considering whether a third-party complaint triggers a duty to defend, the focus is on "the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam). "If the underlying pleadings allege facts that may fall within the scope of coverage, the insurer has a duty to defend; if the pleading only alleges facts excluded by the policy, there is no duty to defend." *Siplast*, 23 F.4th at 493. A third-party complaint must both allege and seek damages "for an event potentially covered by the policy." *Id.* (quoting *D.R.-Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)).

When deciding whether a third-party complaint alleges a claim covered by the duty to defend, courts "construe the pleadings liberally" and "resolve all doubts regarding the duty to defend in favor of the duty." *Zurich*, 268 S.W.3d at 491 (citations omitted).

> The initial burden of proof is on the insured to show that a given claim is covered by the insurance policy; however, when the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply. For both the third-party complaint and the insurance policy, if there are any ambiguities, the tie goes to the insured.

*Siplast*, 23 F.4th at 494 (cleaned up); *see also Gonzalez v. Mid-Continent Cas. Co.*, 969 F.3d 554, 557 (5th Cir. 2020) ("When the language of an insurance policy is susceptible to more than one construction, it should be construed strictly against the insurer and liberally in favor of the insured.") (internal quotation marks omitted).

## III.    Analysis

As explained above, the insurance policy at issue is a Directors & Officers and Entity Liability Coverage policy. The purpose of a D&O policy generally is to protect directors and officers from personal liability resulting from business decisions. *Caterpillar, Inc. v. Great Am. Ins. Co.*, 62 F.3d 955, 957 n.1 (7th Cir. 1995) ("D & O policies, which first became popular in the 1960s, protect directors and officers from the potential liability they might incur in performing their duties, thereby encouraging better directors and officers to accept responsibilities and allowing them to take management risks they might not otherwise take.").

> Typically, a D & O policy provides liability coverage directly to the officers and directors of a corporation for claims asserted against them for wrongful acts, errors, omissions, or breaches of duty and then also provides indirect coverage to the corporation for reimbursement of any monies expended to indemnify its officers and directors either by operation of state law or under the corporate bylaws. A D & O policy, however, is not intended to endow the corporation itself with general liability coverage.

*Alvord Invs., LLC v. Hartford Fin. Servs. Grp., Inc.*, 660 F. Supp. 2d 850, 856 (W.D. Tenn. 2009).

The parties dispute whether Federal has a duty to defend and indemnify SXSW in the Underlying Suit under the terms of the D&O Policy. The Court considers their arguments in turn.

## A. Federal Has No Duty to Defend SXSW

Federal argues that it has no duty to defend or indemnify SXSW because (1) one of the defendants in the Underlying Suit is not an insured under the D&O Policy; (2) SXSW did not tender the defense of the Underlying Suit to Federal; (3) SXSW has failed to demonstrate that the Underlying Suit seeks a covered "Loss" under the D&O Policy; (4) the Contract Exclusion provision bars coverage; and (5) the Professional Services Exclusion bars coverage.

### 1. SXSW Holdings Inc. Is Not an Insured

Federal first argues that it has no duty to defend *SXSW Holdings, Inc.* in the Underlying Suit because it is not an insured under the D&O Policy. SXSW does not dispute this; rather, SXSW admits that "SXSW Holdings is not a party to this coverage lawsuit" and does not contend that it is a necessary party that must be joined. Dkt. 14 at 8. Because SXSW does not argue that Federal has a duty to defend or indemnify SXSW Holdings, Inc., Federal's argument regarding SXSW Holdings, Inc. is irrelevant to whether Federal has a duty to defend or indemnify SXSW.

### 2. SXSW Timely Tendered the Defense

Next, Federal argues that it has no duty to defend SXSW in the Underlying Suit because SXSW failed to timely tender the defense of the Underlying Suit within 30 days of being served with the lawsuit. The D&O Policy, like all insurance policies, requires the insured to notify the insurer within a reasonable amount of time after being notified of a Claim. Specifically, the D&O Policy requires the insured to "tender the defense of any **Claim** to the Company by notifying the Company within a reasonable time after such **Claim** is first received by the **Insured**, but in no event later than thirty (30) days after the date such **Claim** is first received by the **Insured**." Dkt. 8-3 at 35. "Claim" is defined, in relevant part, as a (1) "written demand first received by an **Insured** for

monetary damages or non-monetary relief, including injunctive relief," or (2) "civil proceeding commenced by the service of a complaint or a similar pleading." *Id.* at 17.

SXSW first received notice of the Leventhal Demand on April 11, 2020, Dkt. 11-5 at 7, and received notice of the Underlying Suit on April 24, 2020, when it was filed. Dkt. 8-2. It is undisputed that SXSW notified Federal of the Leventhal Demand on April 16, 2020, and of the Underlying Suit on April 27, 2020. *See* Dkt. 8-4 at 1. In fact, in its May 18, 2020 letter to SXSW denying SXSW's Claim, Federal specifically "acknowledge[d] receipt of the Demand on April 16, 2020, and the Complaint on April 27, 2020." *Id.*

Federal now argues that SXSW's notice was ***too early***, and that it should have waited until it was served with process of the Underlying Suit. The Policy has no such requirement. Because SXSW gave notice to Federal within 30 days of receiving "written demand first received by an Insured for monetary damages or non-monetary relief," SXSW's defense tender was timely. Accordingly, Federal's argument is meritless.

### 3. The Underlying Suit Seeks a Covered Loss

Federal argues that the Underlying Suit did not seek a covered "Loss" under the D&O Policy. When determining whether a third-party complaint alleges a claim covered by the duty to defend, the Court must "construe the pleadings liberally" and "resolve all doubts regarding the duty to defend in favor of the duty." *Zurich*, 268 S.W.3d at 491.

The Policy defines Loss as "the amount which an **Insured** becomes legally obligated to pay as a result of any **Claim**," including compensatory damages, judgments, settlements, and defense costs. Dkt. 8-3 at 19 ¶ IV. The Policy further states that:

> **Loss** does not include any portion of such amount that constitutes any:
>
> (1) cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief; [or]

(2) amount uninsurable under the law pursuant to which this
Coverage Part is construed.

*Id.* at 19 ¶ IV.

As stated above, in their Complaint, the *Bromley* Plaintiffs alleged breach of contract, unjust enrichment, and conversion, and their requested relief included the following:

- "actual damages and equitable monetary relief to Plaintiffs and the Class and/or order SXSW to return to Plaintiffs and the Class the amount each paid to SXSW;"

- "pre-judgment and post-judgment interest on such monetary relief;"

- "injunctive and/or declaratory relief, including, without limitation, an order that requires SXSW to issue refunds to all members of the Class;" and

- "reasonable attorneys' fees and costs."

Dkt. 8-2 at 13.

Federal argues that the *Bromley* Plaintiffs did not seek a covered "Loss" under the D&O Policy because they sought damages "uninsurable under the law." Dkt. 8-3 at 19. Specifically, Federal characterizes the *Bromley* Plaintiffs' claim for "the return of any amounts paid to SXSW for Credentials"[1] in the Underlying Complaint as a request for "a disgorgement of ill-gotten gains and a restitutionary payment," which "are not insurable under Texas law." Dkt. 11 at 19.

In support of this argument, Federal relies on *Nortex Oil & Gas Corp. v. Harbor Ins. Co.*, 456 S.W.2d 489 (Tex. App.—Dallas 1970, no writ); *Level 3 Commc'ns Inc. v. Fed. Ins. Co.,* 272 F.3d 908 (7th Cir. 2001); and *In re TransTexas Gas Corp.*, 597 F.3d 298 (5th Cir. 2010). As further addressed below, all three of these cases involved unlawful or fraudulent conduct not at issue here. *See William Beaumont Hosp. v. Fed. Ins. Co.*, 552 F. App'x 494, 499 (6th Cir. 2014) (stating that "*Level 3* and its progeny all involve wrongfully acquiring something—such as stealing from pension funds, securities fraud, or unlawfully levied taxes").

---

[1] Dkt. 8-2 ¶ 63.

In *Nortex Oil*, Humble Oil and Refining Company and Texaco sued Nortex Oil and Gas Corporation for trespass, conversion, and unjust enrichment after discovering that Nortex had engaged in slant drilling and illegally obtained oil from Humble and Texaco's oil wells. 456 S.W.2d at 490. Humble and Texaco alleged that Nortex converted their property by wrongfully appropriating and selling their oil. *Id.* at 490-91. After Nortex settled the suit and paid Humble and Texaco $48,860, Nortex filed a claim with its insurer, Harbor Insurance Company, for indemnification and payment for its "ultimate net loss" under its property damage liability insurance policy. *Id.* at 491. Harbor denied the claim, partly on the basis that the underlying claims for trespass and unjust enrichment were not claims for property damage within the meaning of the policy. The state court agreed, reasoning:

> We are convinced that the claims of Humble and Texaco were for conversion and unjust enrichment, and not claims for property damage within the meaning of the policy. When Nortex settled the claims of Humble and Texaco it did not sustain a 'loss' within the meaning of the insurance contract; it was merely paying for oil it had removed and sold from the land of Humble and Texaco. An insured (under such a policy as we have here) does not sustain a covered loss by restoring to its rightful owners that which the insured, having no right thereto, has inadvertently acquired. (The insured's innocence and good faith are immaterial.) The insurer did not contract to indemnify the insured for disgorging that to which it was not entitled in the first place, or for being deprived of profits to which it was not entitled.

*Id.*

Similarly, in *Level 3*, the plaintiffs in the underlying suit sold shares in their corporation to Level 3 and alleged that they had done so because of fraudulent representations by Level 3. 272 F.3d at 909. "In effect, Level 3 was accused of having obtained the plaintiffs' company by false pretenses; and the plaintiffs' suit sought to rescind the transaction and recover their shares, or rather the monetary value of the shares because their company can no longer be reconstituted." *Id.* The parties settled for $11.8 million. Level 3 filed a claim with its insurer, claiming a loss under

its D&O policy. The insurer argued that "a D&O policy is designed to cover only losses that injure the insured, not ones that result from returning stolen property, and that if such an insurance policy did insure a thief against the cost to him of disgorging the proceeds of the theft it would be against public policy and so would be unenforceable." *Id.* at 910. The Seventh Circuit Court of Appeals agreed, finding that settlement of the securities fraud suit was not a covered "loss" because a loss "does not include the restoration of an ill-gotten gain." *Id.* The court reasoned that the underlying plaintiffs sought standard securities fraud damages that were "restitutionary in character," and that: "An insured incurs no loss within the meaning of the insurance contract by being compelled to return property that it had stolen, even if a more polite word than 'stolen' is used to characterize the claim for the property's return." *Id.* at 911.

Finally, in *TransTexas Gas Corp.*, the Fifth Circuit addressed whether a bankruptcy judgment against a Chapter 11 debtor's chief executive officer requiring the CEO to repay more than $2 million in severance he fraudulently received from the company was a "loss" within the meaning of the insurance policy. 597 F.3d 308-09. The policy excluded "matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed." *Id.* at 309. Relying on *Nortex Oil* and *Level 3*, the Fifth Circuit concluded: "Payments fraudulent as to creditors that must therefore be repaid due to bankruptcy court order is a disgorgement of ill-gotten gains and a restitutionary payment." *Id.* at 310. Because "a 'loss' within the meaning of an insurance contract does not include the restoration of an ill-gotten gain," the bankruptcy judgment requiring the return of illegal and fraudulent payments was not a loss under the policy. *Id.* (quoting *Level 3*, 272 F.3d at 911).

Thus, the insured in each of these cases was subject to disgorgement because it retained funds unlawfully or fraudulently. Here, there is no allegation that SXSW fraudulently or illegally acquired the *Bromley* Plaintiffs' payments. Rather, the *Bromley* Plaintiffs argue that SXSW

breached a contract and committed conversion by failing to return their payments after the 2020 South by Southwest Festival was cancelled. These cases do not demonstrate as a matter of law that the *Bromley* Plaintiffs are seeking damages "uninsurable under the law."

Federal's argument also omits the fact that, in addition to requesting a return of payments they made to SXSW, the *Bromley* Plaintiffs sought "actual damages and equitable monetary relief to Plaintiffs and the Class," pre-judgment and post-judgment interest monetary relief, attorneys' fees, and costs. Dkt. 8-2 at 13. Thus, the *Bromley* Plaintiffs did not merely seek equitable injunctive relief, as Federal argues; rather, they requested damages, which are a covered loss under the D&O Policy. Federal's arguments to the contrary are without merit.

### 4. The Contract Exclusion Provision Bars SXSW's Claims

Federal also contends that the Contract Exclusion provision in the D&O Policy bars all of the claims alleged in the Underlying Suit. Federal bears the burden of proving that a policy exclusion applies. *Siplast*, 23 F.4th at 494.

The Contract Exclusion provision provides that Federal

> shall not be liable for **Loss** on account of any **Claim** against an **Organization**: based upon, arising from or in consequence of any liability *in connection with any oral or written contract or agreement* to which an **Organization** is a party, provided that this Exclusion (B)(1) shall not apply to the extent that such **Organization** would have been liable in the absence of such contract or agreement.

Dkt. 8-3 at 22 ¶ IV(B)(1) (emphasis added). Courts have found similar contract exclusion provisions "unambiguous" and accorded the terms their "plain meaning." *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 925 (N.D. Tex. 2009). Such exclusions are "given a broad, general, and comprehensive interpretation." *Gemini Ins. Co. v. The Andy Boyd Co. LLC*, 243 F. App'x 814, 815 (5th Cir. 2007).

### a.  The Contract Exclusion Provision Applies to the Breach of Contract Claim

The *Bromley* Plaintiffs asserted a breach of contract claim against SXSW in the Underlying Suit. Dkt. 8-2 ¶¶ 55-63. That claim, by definition, falls within the Contract Exclusion provision. Nevertheless, SXSW argues that the Contract Exclusion provision does not apply because the Underlying Suit does not assert a "proper" breach of contract claim, partly because it does not allege the elements of a breach of contract. Dkt. 14 at 8.

SXSW thus attempts to attack the merits of the *Bromley* Plaintiffs' breach of contract claim. The duty to defend, however, "is determined by the allegations of the petition when considered in the light of the policy provisions without reference to the truth or falsity of such allegations." *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973). "The duty is triggered if the plaintiff alleges facts that would give rise to any claim against the insured that is covered by the policy." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31 (Tex. 2008). Courts consider whether the "policy itself imposes a duty to defend without regard to the merits of the underlying claim against the insured." *Id.*

The *Bromley* Plaintiffs allege the following in support of their breach of contract claim:

(1) "Plaintiffs and the Class entered into a contract with SXSW, which SXSW refers to as the Participation and Credentials Terms and Conditions."

(2) "Plaintiffs and the Class performed their obligations under the contract by providing payment in consideration for Credentials."

(3) SXSW violated the contract by "refusing to refund Plaintiffs and the Class the purchase price paid for Credentials" after the 2020 South by Southwest Festival was cancelled."

(4) "Plaintiffs and the Class have suffered monetary damages."

Dkt. 8-2 ¶¶ 55-62. Accordingly, the Underlying Suit clearly alleges a breach of contract claim under Texas law.[2]

---

[2] *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 415 (5th Cir. 2021) ("The elements of a breach of contract claim under Texas law are: (1) the existence of a valid contract; (2) performance or tendered

Because the Underlying Suit clearly and unambiguously asserts a breach of contract claim, the Contract Exclusion provision applies and there no coverage for the breach of contract claim. *See Gemini Ins. Co.*, 243 F. App'x at 815 (holding that contract exclusion provision applied to bar plaintiff's breach of non-disclosure agreement claim); *Great Am. Ins. Co. v. Beyond Gravity Media, Inc.*, 560 F. Supp. 3d 1024, 1037 (S.D. Tex. 2021) (holding that breach of contract exclusion in commercial general liability policy covering personal and advertising injuries barred coverage for underlying breach of non-competition clause claims); *Mt. Hawley Ins. Co. v. Slay Eng'g*, 390 F. Supp. 3d 794, 801 (W.D. Tex. 2019) (holding that breach of contract exclusion applied with respect to city's breach of contract claims against defendants in underlying suit).

### b. The Contract Exclusion Provision Applies to the Unjust Enrichment and Conversion Claims

The Court also finds that the Contract Exclusion provision applies to the *Bromley* Plaintiff's unjust enrichment and conversion claims because those claims "arise from or in consequence of any liability in connection with any oral or written contract or agreement." Dkt. 8-3 at 22. Under Texas law, when an exclusion in an insurance policy precludes coverage for injuries "arising from" or "arising out of" described conduct, "the exclusion is given a broad, general and comprehensive interpretation." *Century Sur. Co. v. Seidel*, 893 F.3d 328, 333 (5th Cir. 2018) (quoting *Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999)). To fall within such exclusions, "a claim need only bear an incidental relationship to the described conduct for the exclusion to apply." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 (5th Cir. 2003). In addition, the Fifth Circuit has reasoned that "arising from" or "arising out of" are "words of much broader significance than 'caused by,'" and "are ordinarily understood to mean

---

performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.").

'originating from' 'having its origin in,' 'growing out of' or 'flowing from.'" *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 524-25 (5th Cir. 2006); *see also Utica Nat. Ins. Co. of Texas v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) ("This Court has held that 'arise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation.").

The unjust enrichment and conversion claims "arise from" the Underlying Contract because, but for execution of the Underlying Contract, SXSW would not have obtained the *Bromley* Plaintiffs' money and could not have allegedly withheld or converted that money. The breach of contract, unjust enrichment, and conversion claims all are based on the same operative facts: The Underlying Plaintiffs purchased Credentials and did not receive refunds under the Underlying Contract. But for the Underlying Contract, there would be no Underlying Suit. *See Glob. Fitness Holdings, LLC v. Navigators Mgmt. Co., Inc.*, 854 F. App'x 719, 722 (6th Cir. 2021) (holding that contract exclusion provision applied to class plaintiffs' unjust enrichment and conversion claims where "every aspect" of underlying litigation was premised on existence of contracts between defendant and customers); *see also Gemini Ins. Co.*, 243 F. App'x at 816 (holding that contract exclusion provision barred all claims arising out of breach of contract); *Mt. Hawley*, 390 F. Supp. 3d at 802 (holding that contract exclusion provision applied to negligence claims where claims were based on same alleged conduct as breach of contract claims and were at minimum "incidentally related" to contracts). As the Fifth Circuit reasoned in *Gemini Ins. Co.*, "for the breach of contract exclusion to apply, the breach of contract need not have caused the injuries. Instead, the breach of contract must merely have had an incidental relationship to or connection with the injuries." 243 F. App'x at 816.

### c.  The Policy Is Not Illusory

SXSW contends that "Federal's overbroad interpretation of its contract exclusion would eliminate all coverage for any suit in which a complaint ever mentioned the word 'contract' and would render coverage under the policy largely illusory." Dkt. 14 at 4. The Court disagrees.

"Texas disfavors constructions of insurance contracts that render all coverage illusory. But when an insurance policy will provide coverage for other claims, Texas courts are unlikely to deem the policy illusory." *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 515 (5th Cir. 2020). In addition, "[a]n insurance policy is not illusory merely because it does not provide coverage for a claim the policyholder thought it would cover." *Id.*

Courts have found similar contract exclusion provisions not to be illusory. *See Gemini Ins. Co.*, 243 F. App'x at 816 (upholding similar contract exclusion provision); *Mt. Hawley Ins. Co. v. Huser Constr. Co., Inc.*, No. CV H-18-0787, 2019 WL 1255756, at *7 (S.D. Tex. Mar. 19, 2019) (finding that similar contract exclusion provision not illusory), *aff'd*, 797 F. App'x 183 (5th Cir. 2020); *Scottsdale Ins. Co. v. Mt. Hawley Ins. Co.*, No. CIV.A. M-10-58, 2011 WL 9169946, at *9 (S.D. Tex. June 15, 2011) (same), *aff'd*, 488 F. App'x 859 (5th Cir. 2012).

The D&O Policy provides coverage for claims unrelated to a contract or "if the **Organization** would have been liable in the absence of such contract or agreement." Dkt. 8-3 at 22. Because the D&O Policy provides coverage in other circumstances, the Policy is not illusory. *See Balfour*, 968 F.3d at 516 ("Because the Policy provides coverage under other factual scenarios, the Policy as written is not illusory."). As noted above, D&O policies typically to protect directors and officers from personal liability resulting from business decisions. *Caterpillar*, 62 F.3d at 957 n.1. Such policies are "not intended to endow the corporation itself with general liability coverage." *Alvord Invs.*, 660 F. Supp. 2d at 856.

### 5.  Conclusion as to Duty to Defend

Based on the foregoing, the Court finds that the Contract Exclusion provision excludes coverage for all claims in the Underlying Suit.[3] Therefore, Federal had no duty to defend the Underlying Suit.

## B.  Federal Has No Duty to Indemnify SXSW

Settlement of the Underlying Suit does not change application of the Contract Exclusion provision. Federal has no duty to indemnify SXSW based on the Contract Exclusion provision.

## C.  SXSW's Extra-Contractual Bad Faith and Statutory Claims

Finally, SXSW asserts extra-contractual claims pursuant to Texas common law and the Texas Insurance Code. Such claims "generally cannot be maintained when the breach of contract claim they arise out of fails." *Alaniz v. Sirius Int'l Ins. Corp.*, 626 F. App'x 73, 79 (5th Cir. 2015); *see also JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015) ("As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered.").

For an insured to recover on a bad-faith insurance claim when the insurer properly has denied coverage for the claim, the insured must demonstrate that the insurer's "conduct was extreme and produced damages unrelated to and independent of the policy claim." *Id.* Similarly, "an insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018); *see also Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 920-22 (Tex. 2005) (concluding that insured's conversion, bad faith, and statutory claims were "negated" because policy did not cover underlying losses and

---

[3] Because the Court finds that the Contract Exclusion provision eliminates all coverage, it need not address Federal's alternative argument that the Professional Services Exclusion provision bars coverage.

insured did "not allege that he suffered any damages unrelated to and independent of the policy claim").

SXSW has not come forward with evidence that Federal's conduct was "extreme" or that it suffered damages independent of those that would have resulted from an alleged wrongful denial of its claim. *See Alaniz*, 626 F. App'x at 79 (affirming summary judgment for insurer on bad faith and Texas Insurance Code claims because there was no coverage or breach and insured put forth no evidence of "extreme conduct or of damages suffered independent of those that would have resulted from an alleged wrongful denial of his claim"); *Boyd*, 177 S.W.3d at 922 (holding that bad faith claims failed where plaintiff alleged only that insurer improperly denied claim and failed to fairly investigate facts of accident, and plaintiff did not allege that he suffered any damages unrelated to and independent of the policy claim).

For the foregoing reasons, SXSW's bad faith and Texas Insurance Code claims fail, and Federal's Motion for Summary Judgment as to SXSW's extra-contractual claims should be granted. *See Alaniz*, 626 F. App'x at 79; *Menchaca*, 545 S.W.3d at 500; *Boyd*, 177 S.W.3d at 922.

## D. Conclusion

The Court concludes that SXSW's insurance Claim is not covered under the  D&O Policy. Accordingly, Federal's Motion for Summary Judgment should be granted, and SXSW's Motion for Partial Summary Judgment should be denied.

## IV.  Recommendation

The undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Plaintiff SXSW's Motion for Partial Summary Judgment (Dkt. 8), **GRANT** Defendant Federal Insurance Company's Motion for Summary Judgment (Dkt. 11), and enter judgment in favor of Defendant.

The Court **FURTHER ORDERS** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on May 24, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE